IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-82442-TLS |
| | ) | |
| WILLIAM EDWARD JULIEN, | ) | CH. 11 |
| | ) | |
| Debtor. | ) | |

# **ORDER**

Hearing was held in Omaha, Nebraska, on January 6, 2014, on a motion to vacate/motion for relief from orders filed by creditor American National Bank, d/b/a Metro Leasing (Fil. #444), with objections filed by interested party Koley Jessen, P.C., L.L.O. (Fil. #460) and Debtor (Fil. #464). Kathryn J. Derr appeared for Debtor; Jerry L. Jensen appeared for the United States Trustee; Kristin Krueger appeared for Koley Jessen, P.C., L.L.O. ("Koley Jessen"); Richard P. Garden, Jr. appeared for American National Bank, d/b/a Metro Leasing ("ANB"); and Thomas O. Ashby appeared for U.S. Bank.

ANB is asking the court to vacate two prior orders (Fil. #350 and Fil. #361) pursuant to Federal Rule of Civil Procedure 60(b) to the extent the orders are inconsistent with the confirmed plan in this case. For the reasons set forth below, the motion is granted with additional relief.

*Background*

The underlying facts are not in dispute. Debtor filed his Chapter 11 petition on August 23, 2010. On that same date, Debtor also commenced a Chapter 11 case for his corporation, Biovance Technologies, Inc. ("Biovance") (Case No. BK10-82441). On August 31, 2010, ANB filed its entry of appearance and request for notice through its attorney, Richard Garden. On October 15, 2010, ANB filed its unsecured proof of claim (Claim #10-1) in the amount of $271,369.26. Debtor objected and ANB subsequently filed an amended proof of claim (Claim #10-2) in the amount of $120,943.23. Debtor objected to that amended claim and the objection is proceeding as a contested matter.

Meanwhile, Debtor's amended Chapter 11 plan (Fil. #232) was confirmed, as modified by the confirmation order (Fil. #328). The debts of Debtor and Biovance are treated under the same plan filed in both cases. As modified, the confirmed plan provides for payment in full, with interest, of all unsecured claims. Specifically, the confirmed plan provides in part as follows:

1.      Section 3.02 provides that each holder of an administrative expense claim will be paid in full on the effective date of the plan. The effective date of the plan is defined in Section 8.02 as the 11th business day following the date of the entry of the order of confirmation.

2.      Section 4.01 of the plan, as modified by the confirmation order, provides that general unsecured creditors of Debtor shall be paid as follows:

> Creditors in this class shall be paid payment of 100% of the principal amount of allowed unsecured claims with interest at the current Wall Street Journal Prime Rate of 3.25% plus 2 points (5.25%). In the event that the allowed unsecured claims in this class are not paid in full prior to April 30, 2017, all unpaid principal and accrued interest on such claims shall be paid on April 30, 2017 pursuant to the terms herein.

3.  Section 4.01 of the plan also contains similar provisions for unsecured creditors of Biovance.

4.  The confirmation order further provides that the following paragraph shall continue to be part of Article VII of the plan:

> Unsecured creditors of William E. Julien will also receive, pro rata, disposable income of William E. Julien for a period of five (5) years after the Effective Date. Exhibit B. summarizes anticipated disposable income of William E. Julien beginning in 2012 based on a minimum annual salary of $125,000. Disposable income will be paid in annual installments beginning on April 30, 2013 (for year 2012), thereafter for five (5) years through and including April 30, 2017.

Unfortunately, while the confirmation order states that the foregoing paragraph "shall continue to be part of Article VII of the Plan," it does not state what becomes of the rest of Article VII of the plan. Since there is no indication that any portion of Article VII is stricken from the plan, it would appear that all of Article VII remains a part of the confirmed plan. Further, despite the reference in the paragraph to Exhibit B, there is no Exhibit B attached to either the confirmation order or the plan.

5.  Article VII of the plan, which governs the means for the plan's implementation, provides, in part:

> *Source of Payments* – The following properties belonging to Debtor William E. Julien or entities owned by him, and their anticipated selling prices, will be marketed and sold during the term of the Plan with the net proceeds used to pay chapter 11 operating expenses and partially fund payments to unsecured creditors of Debtor William E. Julien under the Plan[.]

The plan then lists four parcels of real property under the heading "Property currently listed for or to be listed for sale with projected sales in 2012[.]" It also lists other properties to be listed for sale in subsequent years. One of the four properties listed as having a projected sale in 2012 is the real property located at 6 Sea Spray Drive, Biddeford, Maine.

6.  Article VII also provides:

> From the gross selling price, payments will be made to brokers and to pay capital gains taxes from the sale of these investment properties . . . . Prior to the

    Effective Date, net proceeds from the sales of the above properties will be used to fund chapter 11 operating expenses as permitted under 11 U.S.C. § 363 and to pay allowed administrative expenses. For sales occurring after the Effective Date, pro rata distributions to unsecured creditors of Debtor William E. Julien of the net sale proceeds will be made within 60 days after the close of sale of each respective property, after deducting selling costs and anticipated capital gains tax from the gross selling price of each property.

7.    Article VII further provides that Debtor estimated the property sales would result in approximately $1,469,550.00 to be distributed to creditors of Debtor and Biovance under the plan. Combined, the claims of unsecured creditors of Debtor and Biovance exceed $5,000,000.00, so the property sales were only one source of payment to creditors.

    Subsequently, Debtor and Biovance defaulted under the plan. Among other defaults, Debtor failed to pay administrative expenses by the effective date of the plan and failed to pay quarterly fees due to the office of the Unites States Trustee. Due to the defaults, the United States Trustee filed a motion to dismiss or convert (Fil. #336), which was set for hearing on November 5, 2012. At the hearing, Debtor offered a payment plan to cure the quarterly fee arrearage which was satisfactory to the United States Trustee. Debtor also offered to begin making monthly payments of $1,500.00 each to his own attorney and to Koley Jessen, the attorneys for the unsecured creditors committee. Debtor further offered to pay the balance due to the attorneys from the proceeds of a pending sale of the real estate located at 6 Sea Spray Drive, Biddeford, Maine. The attorneys did not accept that offer. Therefore, since the pending motion was by the United States Trustee, the court instructed Debtor and the United States Trustee to submit an order incorporating the terms of Debtor's proposal while preserving the rights of the attorneys having administrative expense claims, which order is at Filing #350.

    Notably, however, none of the parties or attorneys involved in the November 5, 2012, hearing notified the court that Debtor's proposal to pay the administrative expenses from the proceeds of the sale of the 6 Sea Spray property was directly contrary to the distribution provisions set forth in Article VII of the confirmed plan.

    Promptly thereafter, Koley Jessen as counsel for the unsecured creditors committee filed its final application for fees and expenses (Fil. #352) and a motion for final order awarding administrative fees and expenses (Fil. #353). Koley Jessen's motion was granted (Fil. #354), and the court subsequently set a status hearing to determine the status of payment of the allowed administrative claims. The status hearing was scheduled because Koley Jessen sought to execute on its order for payment of fees. On December 21, 2012, this court entered an order (Fil. #361) granting Koley Jessen's request for a final order for payment of its fees, but stayed execution thereon until after April 15, 2013, based on Debtor's continued promises to pay the administrative expenses in full from the sale of the 6 Sea Spray property. Again, no party or attorney participating in the hearing advised the court that the use of the 6 Sea Spray property sale proceeds to pay administrative expenses after the effective date of the plan was directly contrary to Article VII of the plan.

Closing of the 6 Sea Spray property sale took place on March 29, 2013, and Debtor did eventually use some of the sale proceeds to pay Koley Jessen and to pay Debtor's attorney. Further, it appears Debtor used some of the 6 Sea Spray property sale proceeds to pay taxes and other expenses regarding other properties, which was not previously authorized by this court and which payments are contrary to the distribution scheme set forth in Article VII of the confirmed plan. Debtor did not file with the court any notice regarding the closing or any accounting as to the closing proceeds.

ANB, an unsecured creditor of Debtor, became aware that the 6 Sea Spray property had been sold but that no distributions had been made to unsecured creditors pursuant to the terms of the confirmed plan. Therefore, ANB and others began the tedious process of seeking information and an accounting from Debtor regarding the distribution of the real estate proceeds. A simple review of the docket will reveal that Debtor was less than cooperative during that process. On August 21, 2013, a detailed disclosure order was entered (Fil. #379) pertaining not only to the distribution of the real estate proceeds, but also to other disclosures regarding Debtor's ongoing business operations. Shortly thereafter, Debtor filed a motion to modify the plan (Fil. #384) in an apparent attempt to retroactively approve the distributions that were contrary to the plan. For a variety of reasons stated on the record, the motion to modify was denied, without prejudice (Fil. #422). Despite this court's suggestion on the record that a properly documented motion to modify with sufficient disclosures and supporting evidence could be filed, Debtor has failed to do so.

## *Discussion*

After extensive discovery and effort to obtain accountings from Debtor, ANB brought the instant motion for relief from orders under Rule 60(b), requesting that this court vacate its priors orders at Filing #350 and #361 to the extent they are inconsistent with the confirmed plan. Specifically, ANB notes that the plan required the administrative claimants to be paid prior to the effective date, and that after the effective date, net proceeds from the property sales were to be paid to the unsecured creditors. To the extent that the orders at Filing #350 and #361 authorized use of the 6 Sea Spray property sale to be used to pay administrative expenses, they are contrary to the terms of the confirmed plan. ANB is correct.

Federal Rule of Civil Procedure 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> . . .
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> . . .
> (6) any other reason that justifies relief.

-4-

Here, Debtor obtained orders of this court delaying payment of administrative expenses by offering to pay the same in a lump sum upon the sale of a parcel of real property – all while failing to advise the court that to do so would be contrary to the express terms of the confirmed plan. It was also done without any formal notice or opportunity to be heard being provided to the class of general unsecured creditors (other than counsel for the unsecured creditors committee, who was seeking payment for administrative expenses), which class was directly impacted by the orders. Despite Debtor's protestations, without having participated in the hearings, ANB and other similarly situated unsecured creditors had no way of knowing that the resolution of the United States Trustee's motion to dismiss and the efforts to obtain payment by counsel for the unsecured creditors committee would, in effect, result in a modification of the confirmed plan to the detriment of the unsecured creditors.

Debtor's counsel now argues that there is no detriment to the unsecured creditors because the plan provides for payment of such claims in full, with interest. However, as every creditor is aware, payment in hand is much more valuable than a simple promise to pay in the future. Unquestionably, this plan required the net proceeds of the real property sale to be paid pro rata to unsecured creditors. That did not happen since some of the net proceeds were used to pay administrative expenses (with the tacit approval of this court) and some of the net proceeds went elsewhere, without any court approval. Therefore, ANB has a valid basis for relief under Rule 60(b), and this court's orders at Filing #350 and #361 are hereby vacated to the extent the same are inconsistent with the confirmed plan.

So, what happens next? I am not, at this time, going to order Koley Jessen and Ms. Derr to disgorge the administrative expense payments that they received. By definition, and by the express terms of the plan, Debtor was required to pay those expenses prior to the effective date of the plan and, at least in Koley Jessen's case, efforts were underway to obtain a judgment lien on the 6 Sea Spray property, which would have resulted in payment from the sale closing proceeds.

Instead, the better approach is to order Debtor to comply with his confirmed plan. Specifically, Debtor was required to pay all administrative expenses prior to the effective date of the plan and failed to do so. Debtor was also required to pay all of the net closing proceeds from the 6 Sea Spray property to unsecured creditors. Debtor failed to do so. Throughout this case, Debtor has failed to live up to his obligations regarding disclosure, discovery, and plan compliance. It is time to address that problem.

IT IS, THEREFORE, ORDERED that this court's orders at Filing #350 and #361 are hereby vacated to the extent the same are inconsistent with the confirmed plan filed herein; and

IT IS FURTHER ORDERED that by January 31, 2014, Debtor shall file with the court a complete, detailed accounting of all the real estate proceeds from 6 Sea Spray Drive, Biddeford, Maine. The accounting shall itemize the sale price, all sale-related expenses, all other amounts paid from the sale proceeds, and any amounts set aside for estimated capital gains taxes. The accounting shall specifically calculate the amount of real estate sale proceeds that should have been paid to

unsecured creditors according to the confirmed plan and should also detail the amounts that were actually paid to unsecured creditors; and

IT IS FURTHER ORDERED that by February 15, 2014, Debtor shall pay to unsecured creditors, in accordance with the terms of Article VII of the confirmed plan, the full amount of the net proceeds from the sale of the 6 Sea Spray property in accordance with the terms of the confirmed plan (less, of course, any amounts previously paid to unsecured creditors from such proceeds); and

IT IS FURTHER ORDERED that Debtor shall, in the future, segregate in a separate account or submit to a third-party escrow agent or trustee all closing proceeds from the sale of any property identified in the confirmed plan, which funds are to be held pending further order from this court. Debtor shall also file detailed accountings immediately upon closing any such sale; and

IT IS FURTHER ORDERED that if any interested party notifies the court that Debtor failed to comply with any of the foregoing orders, the previously deferred motion to dismiss of the United States Trustee (Fil. #336) will be reset for hearing, any interested party may join in the motion, and the court will consider whether the confirmation order should be vacated and whether this Chapter 11 case should be dismissed or converted to Chapter 7.

DATE: January 10, 2014.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    Kathryn J. Derr
    Jerry L. Jensen
    Kristin Krueger
    *Richard P. Garden, Jr.
    Thomas O. Ashby
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.